CASSIE SPRINGER AYENI (SBN: 221506) (Local Counsel)
**SPRINGER AYENI, A PROFESSIONAL LAW CORPORATION**
1901 Harrison St., Ste. 1100
Oakland, CA 94612
Tel: 510.926.6768
Fax: 510.926.6768
Email: cassie@benefitslaw.com

MARK D. DEBOFSKY (seeking Pro Hac Vice Admission)
MARIE E. CASCIARI (seeking Pro Hac Vice Admission)
**DEBOFSKY, SHERMAN & CASCIARI, P.C.**
200 W. Madison St., Ste. 2670
Chicago, IL 60606
Tel: 312.235.4877
Fax: 312.929.0309
Email: mdebofsky@debofsky.com
Email: mcasciari@debofsky.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| DEBBIE COATS, | Case No. 3:17-cv-4500 |
| Plaintiff, | |
| v. | **COMPLAINT (ERISA)** |
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, | |
| Defendant. | |

### JURISDICTION

1. Plaintiff, Debbie Coats ("Plaintiff" or "Coats"), brings this claim for benefits pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA") (29 U.S.C. § 1132(a)(1)(B)). Plaintiff also seeks attorneys' fees pursuant to ERISA § 502(g) (29 U.S.C. § 1132(g)). This Court has subject matter jurisdiction over Plaintiff's claim pursuant to

1   ERISA § 502(e) and (f) (29 U.S.C. § 1132(e) and (f)).  Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of employee welfare benefit plans, which, in this case, involves a long term disability ("LTD") group insurance policy underwritten and administered by Defendant, Liberty Life Assurance Company of Boston ("Defendant" or "Liberty Life"), for the benefit of employees of Robert Half International, Inc. ("Robert Half").

2.   This action may also be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the district court jurisdiction over actions arising under the laws of the United States.

3.   The ERISA statute provides, at ERISA § 503 (29 U.S.C. § 1133), a mechanism for internal or administrative appeals of adverse benefit determinations, and those avenues of appeal have been exhausted.

## VENUE

4.   Venue is proper in the Northern District of California pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) because Defendant is headquartered in this District and the ERISA-governed plan at issue here was administered, in whole or in substantial part, in this District.

5.   Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## INTRADISTRICT ASSIGNMENT

6.   This action arises in the San Francisco Division of the Northern District of California because Defendant is headquartered in Menlo Park, California, which is located in San Mateo County; the ERISA-governed plan at issue here was administered, in whole or in substantial part, in the San Francisco Bay Area; and a substantial part of the events or omissions giving rise to Plaintiff's claim for benefits occurred in the San Francisco Bay Area.

## PARTIES

7. At all times relevant hereto, Coats, who was born in 1962 and was age 52 as of her disability onset date, is and was a resident of Arizona. Nonetheless, a substantial part of the events or omissions giving rise to Plaintiff's claim for LTD benefits took place within the Northern District of California, San Francisco Division.

8. At all times relevant hereto, Liberty Life is and was the insurer and claim administrator of the group LTD policy sponsored by Robert Half, group policy number GF3-860-066675-01 ("Policy") (a true and correct copy of which is attached hereto and by that reference incorporated herein as Exhibit A), for the benefit of its employees; and Liberty Life was doing business within the Northern District of California, San Francisco Division.

9. At all times relevant hereto, the Policy constituted an "employee welfare benefit plan" as defined by ERISA § 3(1) (29 U.S.C. § 1002(1)); and incident to her employment with Robert Half, Plaintiff received coverage under the Policy as a "participant" as defined by ERISA § 3(7) (29 U.S.C. § 1002(7)). This claim relates to LTD benefits under the foregoing Policy.

## RELEVANT POLICY PROVISIONS

10. Plaintiff is entitled to receive LTD benefits due since July 14, 2016, the date Liberty terminated her benefits. Plaintiff is entitled to receive LTD benefits in the amount of $2,610.53 per month, which is calculated at the rate of 66.67% of her pre-disability monthly earnings of $3,915.60, until July 17, 2029, the date Plaintiff would reach the end of the maximum LTD benefit period. The Policy provisions most relevant to Plaintiff's claim for LTD benefits provide as follows:

**"Disability"** or **"Disabled"** means:

     i.   that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his Own Occupation in the usual and customary way; and

     ii.   thereafter, the Covered Person is unable to perform, with reasonable continuity, the Substantial and Material Acts of any occupation, meaning that as a result of sickness or injury the Covered Person is not able to engage with reasonable continuity in any occupation in which he could reasonably be expected to perform satisfactorily in light of his age, education, training, experience, station in life, and physical and mental capacity.

(Ex. A at 12).

**Disability Benefit**

When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy.  The Proof must be at the Covered Person's expense.  For purposes of determining Disability, the Injury or Sickness must occur and Disability must begin while the Employee is insured for this coverage.

(Ex. A at 28).

## FACTS

11. Plaintiff was employed by Robert Half as a full-time Senior Financial Accountant starting February 10, 2015.

12. As a Senior Financial Accountant at Robert Half, Coats "was responsible for: systems improvement, process improvement and automation, budgeting, analysis, reconciliation, and maternity coverage;" and was loaned "out to companies who have mission critical projects where the risk of someone leaving the position would be detrimental to the client."

13. Approximately a year and a half after starting at Robert Half, Plaintiff had to cease working as of June 3, 2015 due to a combination of severe medical impairments including, but not limited to, degenerative disc and joint disease, valley fever disease, autoimmune disorder, lung disease, arthritis, cognitive impairments, back pain, and fatigue. Plaintiff has since undergone extensive treatment for her medical conditions and been frequently hospitalized as a result of such.

14. Plaintiff has not returned to work in any capacity since she first ceased working on June 3, 2015.

15. Subsequent to ceasing her employment, Plaintiff applied for and received short-term disability ("STD") benefits under Robert Half's self-funded STD plan, which was also administered by Liberty Life. Plaintiff received STD benefits from June 10, 2015, following her satisfaction of the STD plan's seven-day elimination period, through November 29, 2015, the end of the maximum benefit period under the STD plan, based on a finding of complete and total disability.

16. Plaintiff then applied for LTD benefits, and her claim was approved by Liberty Life starting November 30, 2015, following her satisfaction of the Policy's 180-day elimination period.

17. Approximately six months later, and despite the lack of any material improvement in Coats's medical condition, Defendant informed Coats in a letter dated July 13, 2016 that it was

terminating her LTD benefits effective July 14, 2016.  Defendant alleged that Plaintiff no longer met the Policy's definition of disability because the medical documentation did not support a level of impairment that prevented her from performing the material duties of her occupation, notwithstanding conclusive evidence to the contrary.

18. Defendant's July 13, 2016 decision was largely based on the biased medical opinions of two reviewing physicians who never examined Plaintiff and who are frequently retained by insurers to perform these medical file reviews.

19. On February 18, 2017, Plaintiff submitted a timely appeal of Liberty Life's decision to terminate her LTD benefits with additional evidence further supporting her total disability.

20. In a letter dated May 18, 2017, Defendant notified Plaintiff that it was upholding its decision to terminate her LTD benefits.  Defendant's decision was once again based on the biased opinions of a file reviewing physician, who never personally evaluated Plaintiff and is frequently retained to conduct such reviews.

21. The medical reviews upon which Liberty Life based its claim determination were cursory, overlooked critical evidence, and structured to cherry-pick only the evidence that favored the termination of benefits while ignoring the overwhelming contrary evidence.  The file reviewers, and the entire structure of Defendant's claim appeal process was biased and self-serving and placed financial considerations ahead of an objective and fair claim evaluation. Defendant thus failed to meet its fiduciary obligations under ERISA to insure an accurate claim decision; apply "higher-than-marketplace quality standards" as required by the Supreme Court in *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115, 128 S. Ct. 2343, 2350 (2008); and provide Coats with a "full and fair review" as required by ERISA § 503 (29 U.S.C. § 1133) and 29 C.F.R. § 2560.503-1.

22. All required pre-litigation appeals seeking the payment of LTD benefits have now been exhausted. Therefore, this matter is ripe for judicial review.

23. The evidence submitted to Defendant establishes that Plaintiff has been continuously unable to work since she first ceased working on June 3, 2015, and has thus met and continues to meet the Policy's definition of total disability since that date. As a result of Plaintiff's diagnoses with a variety of chronic impairments including, but not limited to, degenerative disc and joint disease, valley fever disease, autoimmune disorder, lung disease, arthritis, cognitive impairments, back pain, and fatigue, she remains unable to return to any full-time work. Plaintiff is therefore entitled to receive all LTD benefits due from July 14, 2016, the date Liberty Life terminated her benefits, to the present. Defendant is also obligated to maintain those LTD benefit payments for so long as Plaintiff continues to meet the Policy's terms and requirements for the receipt of those benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor and against Defendant, and that the Court order Defendant to pay all past due LTD benefits to Plaintiff in an amount equal to the contractual amount of benefits to which she is entitled;

B. That the Court order Defendant to pay Plaintiff prejudgment interest on all LTD benefits that have accrued prior to the date of judgment;

C. That the Court order Defendant to continue to pay Plaintiff LTD benefits so long as she continues to meet the Policy's terms and conditions;

D. That the Court award Plaintiff attorneys' fees pursuant to ERISA § 502(g) (29 U.S.C. § 1132(g)); and

E.  That the Court award Plaintiff any and all other penalties, damages, and equitable relief to which she may be entitled, as well as her costs of suit.

Dated: August 8, 2017                    Respectfully submitted,

SPRINGER AYENI
*/s/ Cassie Springer Ayeni*
Cassie Springer Ayeni

DEBOFSKY, SHERMAN & CASCIARI, P.C.
*/s/ Mark D. DeBofsky and Marie E. Casciari*
Mark D. DeBofsky
Marie E. Casciari

*Attorneys for Plaintiff*